Fuchsberg, J.
Defendant was convicted, on his guilty plea, of the crime of attempted possession of gambling records (Penal Law, §§ 110.00, 225.15) in satisfaction of charges of promoting gambling, second degree (Penal Law, § 225.05) and possession of gambling records (Penal Law, § 225.15). He was charged and convicted on the basis of evidence seized from his person pursuant to a search warrant authorizing the search of certain premises, a named individual not the defendant, and "any other persons occupying said premises”. Defendant was one of two such "other persons” on the premises. Prior to his plea, he had moved to suppress the evidence so seized on the ground that the search warrant did not meet the particularity requirements of the Fourth Amendment and was in fact an impermissible general warrant. The motion was denied. The Appellate Term affirmed the conviction and defendant appeals. For reasons which follow, we conclude that defendant’s conviction must be set aside.
The essential facts are not in dispute. On December 14, 1972, a Detective John Smith, a 16-year veteran of the Suffolk County Police Department, obtained a search warrant com *398 manding "any peace officer in the County of Suffolk” to make a daytime search of the "El Parador Restaurant & Cocktail Lounge located at 1647 Fifth Avenue, North Bayshore, New York * * * occupied by Elizar Vidal and of the person of Elizar Vidal and any other persons occupying said premises [,] and of any other person who may be found to have such property in his possession or under his control or to whom such property may have been delivered, for the following property: what are commonly known as policy slips and certain writing representing and being runners records, collectors records and tally sheets and money connected thereto in violation of Section 225.05, Section 225.10 [promoting gambling, second and first degrees, respectively], Section 225.15.2 and Section 225.20.2 [possession of gambling records, of a kind commonly used in a lottery or policy scheme or enterprise, second and first degrees, respectively] of the New York State Penal Law”.
The warrant was issued based upon Detective Smith’s sworn warrant application in which he stated that he had made over two hundred arrests in the illegal gambling area of policy and that the application was based upon his personal knowledge and investigation and upon information supplied by an undisclosed informant whose previously furnished information had led to arrests and convictions in the gambling field.
The detective further stated that on December 7, 1972 between the hours of 5:30 and 6:30 p.m., while stationed in a parked undercover police van, he observed Vidal, "a known and convicted policy operator”, on the sidewalk in front of the El Parador Restaurant & Cocktail Lounge (hereinafter El Parador). He went on to say that during this time, "I observed Puerto Rican male subjects go up to ELIZAR VIDAL, hold a short conversation and then pass papers and monies to him. This transaction was repeated with each of the four subjects that I observed talking with ELIZAR VIDAL. Each subject left the area after giving slips of paper and monies to ELIZAR VIDAL, who, after each transaction would enter the El Parador Restaurant & Cocktail Lounge via the front door, staying inside a short time and then returning to the outside of the restaurant. One of the subjects is a known and convicted policy runner [naming a person not the defendant] * * * At approximately 6:20 P.M., the aforementioned informant walked into view, stopping directly in front of the van in my line of vision. I watched as he took a piece of paper from his *399 pants pocket and opened it. On the paper in question was policy plays or wagers for three number policy. After consulting the paper for a short time informant then went up to ELIZAR VIDAL and handed it, along with the money to ELIZAR VIDAL. After a short conversation the informant left the area. As before, after the transaction, ELIZAR VIDAL went inside the El Parador Restaurant & Cocktail Lounge. At this point I left the area.”
He concluded, "[b]ased on the above stated facts and my experience in the illegal gambling field, it is my opinion that ELIZAR VIDAL is conducting a policy operation at the above stated location and is using the El Parador Restaurant & Cocktail Lounge for the keeping and storing of policy records for said operation. The evidence being sought is of such a nature that it can be easily and quickly destroyed.”
Seven days later the warrant was issued and, at about 6:30 p.m. that same day, it was executed. Detective Smith and five or six fellow officers were about to enter the El Parador when two men came out, apparently recognized the detective, dropped papers to the pavement and fled. Picking up the papers, the detective discovered they were policy slips. He proceeded inside the El Parador, which was open, and saw Elizar Vidal seated at the bar next to one Florencio Riverra. Defendant was seated alone at a table in the restaurant. According to the detective’s testimony at the suppression hearing, these three were the only people present in the premises. There is no indication that defendant made any attempt to flee or resist, any threatening move, or that the officer saw any policy slips or other evidence linking defendant in any manner to the commission of a crime. The officer said he stated that he had a search warrant, showed it only to Vidal and told all three to empty their pockets. When defendant complied, policy contraband was recovered from his possession. All three persons were placed under arrest.
Thereafter, defendant moved to suppress the evidence seized on the ground that he was not named or described in the warrant and that the search of his person violated his constitutional rights. As stated, the motion was denied and, following his guilty plea, the Appellate Term affirmed his conviction.
The challenged language of the warrant in this case—"and any other persons occupying said premises”—would appear to be authorized by a recently enacted section of the CPL (690.15, *400 subd 2), which provides: "A search warrant which directs a search of a designated or described place, premises or vehicle, may also. direct a search of any person present thereat or therein.” There were no provisions of similar effect in the former Code of Criminal Procedure. (Report, NY Temporary Commission on Revision of the Penal Law and the Criminal Code, 1967, § 365.15, Staff Comment, p 395; McKinney’s Cons. Laws of NY, Book 11 A, Practice Commentary, CPL 690.15, pp 210-211.)
Defendant contends first that, as written, this statute authorizes general searches in contravention of the Fourth Amendment and should be struck down, and second that the particular search of his person was unreasonable.
The issue is whether mere presence at a specified place may be a sufficiently particular description of a person in a search warrant to meet the standards of the Fourth Amendment. We agree with defendant’s second contention and have concluded that the warrant in this case, insofar as it commanded the search of the defendant, was too general and that the things seized from him should have been suppressed. We decline, however, to strike down the statute, in conformity with our traditional policy to construe statutes, if possible, in such a manner as to uphold their constitutionality (People v Kaiser, 21 NY2d 86, 103; People v Epton, 19 NY2d 496, cert den 390 US 29; People v Finkelstein, 9 NY2d 342; McKinney’s Cons. Laws of NY, Book 1, Statutes, § 150, p 322, n 4 and cases cited therein).
The Fourth Amendment of the United States Constitution and section 12 of article I of the New York Constitution provide: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
The amendment was enacted in reaction to the evils associated with the use of general warrants in England and the detested writs of assistance in the Colonies. By requiring particularity of description of the persons or places to be searched and the things to be seized, it precludes the use of such general warrants. (For discussion of the important history of the amendment see Stanford v Texas, 379 US 476, 481-485; Frank v Maryland, 359 US 360, 363-365; see, gener *401 ally, Lasson, History and Development of the Fourth Amendment to the United States Constitution, 55 Johns Hopkins Univ. Studies in Historical and Political Science 35-36 [245-246]; see, also, Go-Bart Co. v United States, 282 US 344, 357; Boyd v United States, 116 US 616.) The amendment’s protections are enforceable against the States by virtue of the due process clause of the Fourteenth Amendment (Mapp v Ohio, 367 US 643, 655).
Particularity is required in order that the executing officer can reasonably ascertain and identify (Steele v United States No. 1, 267 US 498, 503) the persons or places authorized to be searched and the things authorized to be seized. To protect the right of privacy from arbitrary police intrusion, the "core” of the Fourth Amendment (Wolf v Colorado, 338 US 25, 27), nothing should be left to the discretion of the searcher in executing the warrant (Marron v United States, 275 US 192, 196).
This does not mean that hypertechnical accuracy and completeness of description must be attained but rather, from the standpoint of common sense (United States v Ventresca, 380 US 102, 108; People v Hendricks, 25 NY2d 129, 137), that the descriptions in the warrant and its supporting affidavits be sufficiently definite to enable the searcher to identify the persons, places or things that the Magistrate has previously determined should be searched or seized. (See, generally, 3 Zett, New York Criminal Practice, § 25.10 [3-5] and cases cited; Cook, Constitutional Rights of the Accused, Pretrial Rights, §§27-28; Mascolo, Specificity Requirements for Warrants under the Fourth Amendment: Defining the Zone of Privacy, 73 Dickinson L Rev 1; see, also, Sufficiency of PersonWarrant-Description, Ann., 49 ALR2d 1209; Search Warrant-Apartment or Room, Ann., 11 ALR3d 1330; Search Warrant-Vehicle-Description, Ann., 47 ALR2d 1444.)
In addition to particularity of description, the Federal and State Constitutions, of course, also require probable cause. The instant case points up the correlation between these two requirements, for it requires us to probe not only the specificity of the defendant’s description in this warrant ("persons occupying said premises”), but also whether there was probable cause to believe that the property described in the warrant would be found on the persons so described at the specified premises. (See La Fave, Search and Seizure: "The Course of True Law . . . Has Not. . . Run Smooth”, 1966, U Ill, LF 255, *402 259-261, and quotation from Comment, 28 U Chi L Rev 664, 687.) The sufficiency of the description in this case will hinge in part on whether there was probable cause to believe that each and every occupant of the El Parador at any time of day possessed the policy slips and gambling records sought under the warrant (cf. People v Easterbrook, 43 AD2d 719, 720, affd 35 NY2d 913 [involving a warrant issued while the former Code Crim. Pro., § 792 was effective]).
What will amount to forbidden generality, or, to put it another way, insufficient particularity in a warrant necessarily depends upon the facts and circumstances of each case. Thus, to say that general warrants are outlawed by the Federal and State Constitutions merely initiates the inquiry. The same may be said of their expressed requirement of probable cause and their ultimate mandate of reasonableness.[1] Like "particularity”, these depend upon the facts and circumstances.
In reviewing the validity of a search warrant to determine whether it was supported by probable cause or whether it contained a sufficiently particular description of its target, the critical facts and circumstances for the reviewing court are those which were made known to the issuing Magistrate at the time the warrant application was determined (People v Hendricks, 25 NY2d 129, 138; People v De Lago, 16 NY2d 289, 292, cert den 383 US 963; People v Rainey, 14 NY2d 35, 38-39; People v Fino, 14 NY2d 160, 163). We must therefore consult the information revealing the facts and circumstances to the issuing Judge, in this case Detective Smith’s affidavit, rather than the circumstances as they existed at the time the warrant was executed, when policy slips and other gambling records were concededly found in the defendant’s possession.
These general considerations in mind, we proceed to the warrant in this case. First, neither the warrant nor its supporting affidavit named the defendant (compare People v Marshall, 13 NY2d 28; People v Rubicco, 30 NY2d 897; People *403 v Green, 33 NY2d 496; People v Brown, 40 Misc 2d 35; People v Nicoletti, 60 Misc 2d 108) or contained any physical description of him (compare People v Rawluck, 14 NY2d 609; United States v Ferrone, 438 F2d 381). He was described merely as an occupant of the El Parador. Though, in other circumstances, a description of this nature might be adequate, it was not enough in this case.
The circumstances as revealed in the information before the issuing Judge,[2] indicated, at best, that there was probable cause to believe that Vidal, the person named in the warrant, might be engaged in a policy operation from the El Parador. While reasonable inferences may be drawn directly from the circumstances shown in a warrant application, there was no support here for the inference that every occupant of the restaurant might be similarly engaged and hence in possession of the policy records sought in the warrant.
The facts before the Judge did not indicate that the premises or a particular area within it was limited to criminal activity or that this activity was ongoing in time. Only one observation of the premises had been made, seven days prior to the warrant application, and lasting but an hour. Only the exterior of the premises was observed by the detective and the transaction involving the informant occurred, as well, outside the restaurant. There is no description of the character of the premises, whether located in a densely or sparsely populated area, whether or not it actually functioned as a bar and restaurant employing cooks and waiters and open to the public, its hours of business, the means of access to it, whether any members of the public appeared to visit it for the purpose of eating and drinking or whether visitors seemed to be carefully screened and seemed admitted only to transact suspected policy business. There is no description or even estimate of the interior of the premises, its size, number of rooms or physical layout.
Further, there is no limitation upon the scope of the area to be searched or the time when the warrant was to be executed. From the circumstances shown in the warrant application, it could as readily have been inferred that the unknown and unpredicted number of occupants at the El Parador might include innocent patrons having a meal or a drink, or service *404 personnel delivering supplies for the daily operation of the restaurant and bar, all having no connection with the suspected criminal activity. Certainly there was no justification for an inference that each and every occupant in each and every area of the bar, the restaurant, the kitchen, the storage rooms and every other part of the premises was likely to possess policy records or be a party to illegal gambling in the premises. In short, there was not probable cause to believe that any person occupying the premises might be in possession of illegal gambling records at the time of the search. As a consequence, the description of defendant merely by reference to his presence at the premises was too general.
The challenged statute pursuant to which the people claim this warrant was authorized (CPL 690.15, subd 2) has been viewed critically by some of the commentators (see, e.g., 3 Zett, New York Criminal Practice, § 25.10 [4]; Pitler, New York Criminal Practice Under the CPL, § 10.34; see, also, Recent Developments, Constitutional Law, 58 Cornell L Rev 614; 1966 U Ill, LF 255, 271-273). We nevertheless have concluded that while the instant case provides an illustration of the potential overbreadth and indefiniteness of the description "any other person present”,[3] if the statute’s application is carefully circumscribed (Berger v New York, 338 US 41, 58), it need not be struck down.
The circumstances under which a warrant may issue for the search of all occupants of a particular place are severely limited: the facts before the issuing Judge at the time of the warrant application, and reasonable inferences from those facts, must establish probable cause to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the articles sought.
An application for this type of warrant must be subjected to rigid scrutiny by the independent Magistrate. It must carefully delineate the character of the premises, for example, its *405 location, size, the particular area to be searched, means of access, neighborhood, its public or private character[4] and any other relevant fact. It must specifically describe the nature of the illegal activity believed to be conducted at the location, the number and behavior of persons observed to have been present during the times of day or night when the warrant is sought to be executed.
The application should also state whether any person apparently unconnected with the illegal activity has been seen at the premises. The warrant itself must limit the locus of the search to the area in which the criminal activity is believed to be confined and, according to the circumstances, may also specify the time for the search.
In determining the reasonableness of a particular warrant application, it is also appropriate to consider the necessity for this type of search, that is, the nature and importance of the crime suspected, the purpose of the search and the difficulty of a more specific description of the persons to be searched. The risk that an innocent person may be swept up in a dragnet and searched must be carefully weighed.
In sum, if, on the particular facts articulated to the issuing Judge, the locus of the search is carefully confined by description and reasonably appears limited to criminal activity, then the challenged statute authorizing searches of "any person present thereat or therein” may be constitutionally applied. The facts made known to the Magistrate and the reasonable inferences to which they give rise, must create a substantial probability (see People v Baker, 30 NY2d 252, 259) that the authorized invasions of privacy will be justified by discovery of the items sought from all persons present when the warrant is executed. If this probability is not present, then each person subject to search must be identified in the warrant and supporting papers by name or sufficient personal description.
The warrant in this case falls far short of meeting these requirements, since it authorized a search of the entire premises at an apparently public place without any showing of probable cause that the premises were confined to illegal activity and that there was a substantial probability that all persons present at the time of execution would possess the items sought.
*406 That only three people, all possessing contraband, happened to be present at the El Parador when the warrant was executed is not determinative. The "paramount concern” is whether, at its inception, the warrant, including the showing on which it was based, satisfies fundamental constitutional requirements (People v Rainey, 14 NY2d 35, 38-39, supra) and fulfills the great promise of the Fourth Amendment that the right of the people to be secure in their persons shall not be violated.
This is not to say, of course, that, without regard to the warrant’s command, a searching officer may not arrest a person and search the immediate area under his control if a crime is committed in the officer’s presence during the execution of the warrant or if he has probable cause to believe that the person has committed a crime. In such a case, the search would be reasonable and it is not critical that it was not authorized by the warrant.
In this case, the record contains no indication that defendant’s behavior by itself furnished independent probable cause for an arrest and incidental search. The warrant, because too general as to him, afforded no justification for his search. The offending items seized from his person should, therefore, have been suppressed. These being the predicate for the charges against him, his conviction must, in turn, be set aside.
Accordingly, the order appealed from should be reversed and defendant’s conviction vacated because obtained in violation of his rights secured by the Fourth Amendment to the United States Constitution and section 12 of article I of the New York Constitution.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order reversed, judgment of conviction vacated and information dismissed.

. "To say that the search must be reasonable is to require some criterion of reason. It is no guide at all either for a jury or for district judges or the police [for a court] to say that an 'unreasonable search’ is forbidden—that the search must be reasonable. What is the test of reason which makes a search reasonable? The test is the reason underlying and expressed by the Fourth Amendment: the history and the experience which it embodies and the safeguards afforded by it against the evils to which it was a response.” (United States v Rabinowitz, 339 US 56, 83, dissenting opn. of Frankfurter, J.)

. The issuing Judge did not question Detective Smith or anyone else on the record for pertinent information in addition to that contained in the affidavit, though this could have been done (CPL 690.40, subd 1).

. The broad language of CPL 690.15 (subd 2) contrasts sharply with the requirements of definiteness set out in its companion sections of the CPL. See, e.g., CPL 690.05 (subd 2) ("designated person”); CPL 690.35 (subd 2, par [b]) ("designated or described place, vehicle or person”); CPL 690.40 (subd 2) ("place, premises, vehicle or person designated or described in the application”); CPL 690.45 ("A search warrant must contain: * * * 4. A designation or description of the place, premises, or person to be searched, by means of address, ownership, name or any other means essential to identification with certainty” [emphasis added]).

. While the public rather than the private nature of the premises to be searched is not determinative, it is a significant factor to be considered. (Compare, e.g., People v Easterbrook, 43 AD2d 719, affd 35 NY2d 913, supra.)