*89 OPINION OF THE COURT
Geoffrey J. O’Connell, J.
Defendant having moved to suppress potential evidence consisting of statements (CPL 710.20 [3]) and tangible property alleged to have been illegally seized (CPL 710.20 [1]), a combined Mapp-Huntley hearing was held on February 5, 1986. Following are the court’s findings of fact and conclusions of law.
FINDINGS OF FACT
Detective Francis Magaldi, who has been a detective with the Nassau County Police Department for 10 years, was assigned to the Vice Squad in September of 1985. He was informed by Police Officer Moore, a member of the City of Glen Cove Police Department "that Billy Ayers, son of the notorious bookmaker William Ayers, was taking bets at the Partners’ Bar located at 225 Sea Cliff Avenue, Sea Cliff, Nassau County”. Detective Magaldi was not acquainted with either of the Ayers.
Detective Magaldi went to the Partners’ Bar at 12:30 p.m. on September 13, 1985. There were approximately 18 patrons present and Billy Ayers was sitting next to a shuffleboard on which there were various racing forms. The detective observed various individuals with papers open to the racing section approach Billy Ayers and hand him money. Some were overheard to ask for a letter in a race. Mr. Ayers would take a pad from his shirt pocket, write on it, tear off the top piece of paper and go to a room in the rear part of the bar. At one point a bettor walked up to Billy Ayers and asked if there was still time to make a bet. Mr. Ayers responded: "There are eight minutes to post time”. There was a public phone with an "out of order” sign on it. Twice the phone rang and was answered by Mr. Ayers. Mr. Ayers took out his pad, wrote on it, tore off the top sheet and went to the back room.
Detective Magaldi returned to the Partners’ Bar on September 16, 1985 at 12:15 p.m. He made observations similar to those on September 13th and he also overheard a bettor ask Billy Ayers: "About how much do you make a week doing this, Billy?” Mr. Ayers replied: "After expenses, around $200”.
Detective Magaldi returned for a third time on September 20, 1986. Observations similar to those on the first two occasions were again made. In addition, after the barmaid selected the winning horse in a race, Billy Ayers announced while *90 presenting her with her winnings: "Why go to OTB when you can bet here?”
On September 24, 1985, Detective Magaldi made application to County Court Judge Belfi for a warrant authorizing a search of the ground floor of the Partners’ Bar for gambling bets, wagers, records, paraphernalia and equipment. The application recited the observations testified to at the hearing. It described Billy Ayers as "about 30 years old, about 6’, medium build, fair complexion and facial hair”. He was also described as wearing glasses. The application requested that the court "issue a warrant and order of seizure in the form annexed”. The warrant is addressed to: "frangís magaldi, or any other police officer of the county of Nassau”. In pertinent part it reads: "you are therefore commanded within ten days of the issuance of this order, between the hours of 6:00 a.m. and 1:00 p.m., and without the necessity of knocking and announcing authority, of the ground floor of the Partners Bar”. The specific direction to search was omitted. Detective Magaldi was present in the Partners’ Bar when the warrant was executed although he did not reveal his identity as a police officer.
conclusions of law
The defendant contends that the omission of the direction to search and seize invalidates the warrant. Given the preference accorded search warrants, warrants and their supporting documents are read in a commonsense manner and not hypertechnically. (United States v Ventresca, 380 US 102.) Defects in the nature of clerical omissions do not invalidate a warrant or its execution. (People v Davis, 93 AD2d 970, citing People v Nieves, 36 NY2d 396, 401; People v Brooks, 54 AD2d 333, 335; People v Parliman, 56 AD2d 966.) Here the application clearly requested authorization to search for and seize gambling records and the issuing Judge, by signing the warrant and approving a "no-knock” provision (CPL 690.45 [7]), clearly intended to direct a search.
The defendant further contends that the relationship between himself and the items seized is so tenuous as to preclude their admission in evidence. That issue is not properly one for a suppression hearing. It suffices to note that there has been presented no basis for suppression of the physical evidence.
Similarly, the statements made by the defendant in a non *91 custodial setting within the hearing of an undercover police officer cannot be said to be involuntary or obtained in violation of any constitutional right of the defendant.
The motions to suppress are denied.