JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Judge Nancy A. Fuerst that denied Lisa Julius's Petition for Post-Conviction Relief following her conviction for trafficking less than one gram of cocaine. We reverse and remand.
 {¶ 2} After her trial on the trafficking charge, Julius appealed to this court in "State v. Julius I."[1] Among other errors, she claimed her lawyer failed to adequately challenge her standing to suppress a search warrant in her motion to suppress evidence recovered from a search of her person, despite the fact that the warrant authorized a search of all occupants of the apartment. We affirmed her conviction, specifically holding that any error by her lawyer in her handling of illegal search and seizure issues did not represent ineffective assistance of counsel because the proceedings would not have concluded differently.[2]
 {¶ 3} While State v. Julius I was pending, she filed a motion for post-conviction relief asserting that her trial lawyer was ineffective in failing to include in the trial record the affidavit supporting the "all person" search warrant executed on the southeast corner, first floor apartment of 1722 E. 133rd Street in Cleveland, and leading to her arrest. She argued that failure to include the affidavit in the record precluded her appellate lawyer from attacking its sufficiency in supporting the issuance of the warrant because the affidavit did not, as a matter of law, support the warrant authorizing the search of her person, as an individual present in the suspected premises. The State countered with a motion to dismiss contending that all ineffective assistance claims were, or could have been, argued upon direct appeal, and the doctrine of res judicata operated to bar claims now asserted.
 {¶ 4} In a July, 2000 opinion containing findings of fact and conclusions of law, the judge found that the petition did not establish that either the proceeding or the outcome of the trial would have been different had the application for the search warrant been presented at the suppression hearing; and, that because evidence of the application could have been raised at trial, the doctrine of res judicata precluded its consideration in Julius's post-conviction relief petition.
 {¶ 5} Julius now appeals in two assignments of error, which we discuss in reverse order.
 {¶ 6} "II. The Trial Court Erred When it Dismissed the Petition for Post-conviction Relief on Grounds That the Allegations Contained Therein Were Barred by the Doctrine of Res Judicata."
 {¶ 7} According to R.C. 2953.21, in relevant part:
 {¶ 8} "(A)(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
 {¶ 9} * * *
 {¶ 10} "(A)(4) A petitioner shall state in the original or amended petition filed under division (A) of this section all grounds for relief claimed by the petitioner. Except as provided in section 2953.23 of the Revised Code, any ground for relief that is not so stated in the petition is waived.
 {¶ 11} * * *
 {¶ 12} "(C) The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
 {¶ 13} "(D) Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion. Within twenty days from the date the issues are made up, either party may move for summary judgment. The right to summary judgment shall appear on the face of the record.
 {¶ 14} "(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending. If the court notifies the parties that it has found grounds for granting relief, either party may request an appellate court in which a direct appeal of the judgment is pending to remand the pending case to the court."
 {¶ 15} * * *
 {¶ 16} A defendant is barred by the doctrine of res judicata from raising any defense or constitutional claim that was or could have been raised at trial or on direct appeal from his conviction.[3] Because an appeal from the judgment of conviction is limited to the trial court record, a petition for post-conviction relief may defeat the res judicata bar only if its claims are based upon evidence de hors the record.[4]
Even if an issue was raised on direct appeal, a defendant may raise the same issue in a petition for post-conviction relief upon a showing that the issue could only be fairly determined from matters outside the record.[5]
 {¶ 17} On the day of Julius's trial, her lawyer argued that the evidence forming the basis for the charges[6] against her client should have been suppressed because the police had actually searched an apartment different from the one described on the face of the warrant. The State responded that, since Julius was not an owner or lessee of the premises searched, she had no standing to contest the sufficiency of the warrant, and the judge denied the motion. These issues were fully argued on direct appeal, or could have been based on the then-current state of the record, and were decided against Julius.[7] Hence, further review of these issues in the form of a motion for post-conviction relief unquestionably would have been improper.
 {¶ 18} In the petition for post-conviction relief, however, Julius contended that the affidavit supporting the warrant was insufficient to support its issuance because an "all persons" clause granting the police the authority to search anyone found at the premises was overbroad and unwarranted. Since Julius could not utilize this argument from the record, because the affidavit was not entered into the case record at any point of the proceedings, the constitutional argument that ineffective assistance of counsel had deprived Julius of meaningful representation conferred by the Sixth Amendment was properly premised on evidence de hors the record. The judge erred in the finding that the petition could be denied on res judicata grounds. This assignment of error has merit.
 {¶ 19} "I. The Trial Court Erred When it Found That the Search Warrant Application Was Sufficient to Justify Issuance of an `All Persons' Search Warrant."
 {¶ 20} Where a claim raised by a petition for post-conviction relief under R.C. 2953.21 is sufficient on its face to raise an issue that petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends on factual allegations that cannot be determined by examination of the files and records of the case, the petition states a substantive ground for relief.[8] A petitioner seeking post-conviction relief has the initial burden of providing evidence of sufficient operative facts to demonstrate a cognizable claim of a constitutional error.[9] However, "upon a motion by the prosecuting attorney for summary judgment, a petition for post-conviction relief shall be dismissed where the pleadings, affidavits, files and other records show that there is no genuine issue as to any material fact, and there is no substantial constitutional issue established."[10]
 {¶ 21} "Ineffective-assistance claims are governed by a two-prong test first articulated in Strickland v. Washington.[11] First, the appellant must show that counsel's performance `fell below an objective standard of reasonableness,'[12] and `made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment.'[13] A reviewing court must strongly presume that `counsel's conduct falls within the wide range of reasonable professional assistance,' and must `eliminate the distorting effects of hindsight, * * * and * * * evaluate [counsel's] conduct from counsel's perspective at the time.'"[14] "Second, the appellant must demonstrate prejudice — i.e., `a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.'[15] `A reasonable probability is a probability sufficient to undermine confidence in the outcome.'[16]"[17] A petitioner for post-conviction relief bears the burden of demonstrating both the ineffectiveness of counsel and the reasonable probability that, but for the errors of counsel, the outcome of the trial would have been different.[18]
 {¶ 22} Accordingly, our task is to examine the record, including the newly supplied affidavit attached to the search warrant, to determine whether, had Julius's trial lawyer introduced the affidavit into evidence and protested its sufficiency, the motion to suppress would, or should, have been granted. We think so.
 {¶ 23} In his affidavit, Detective John Gioitta of the East Cleveland Police Department averred as follows:
 {¶ 24} He summarized his extensive training and experience in the arena of narcotics law enforcement, including more than ten years experience and participation in more than five hundred arrests. He averred that on premises of 1722 E. 133rd Street, at the first floor apartment on the southeast corner of the building, with a door on the south side of the building, accessible from the first floor common hallway, was being used for criminal purposes, basing his statement on the following facts:
 {¶ 25} The receipt of several anonymous citizen complaints in the month preceding execution of the warrant;
 {¶ 26} Police surveillance of the premises, where large numbers of people had been seen to enter and exit, the building after staying a short time (indicative, in his experience, of drug activity);
 {¶ 27} A controlled buy of crack cocaine from a male in the apartment, by a CRI with money provided by police, executed three days before the affidavit was issued, and having first recorded the serial number of the $20 bill used;
 {¶ 28} A positive field test of the substance returned to the police by the CRI after the controlled buy, as crack cocaine;
 {¶ 29} The past reliability of the CRI in engaging in controlled buys of illegal drugs;
 {¶ 30} That those engaged in drug activity are routinely armed, and in possession of easily concealable small amounts of narcotics; and,
 {¶ 31} It was necessary to search the premises at night to minimize the potential for destruction of evidence and ensure the safety of the executing officers.
 {¶ 32} On the strength of this affidavit, East Cleveland Municipal Court Judge Una Keenan approved the issuance of a warrant authorizing the search of the apartment and all persons found inside it.
 {¶ 33} Constitutional jurisprudence has long recognized that theFourth Amendment to the United States Constitution was drafted, in part, to bar the use of general warrants under federal power.[19] Article I, Section 14 of the Ohio Constitution provides protections coextensive to those supplied by the Fourth Amendment.[20] Although historical understanding of the need for search-warrant specificity is more easily shown concerning places searched and objects searched for, courts have reasoned that the requirement extends to the search of individuals as well.[21]
 {¶ 34} "There is some authority for the proposition * * * that an `all persons' provision is, of itself, too general in its scope and, therefore, violates the Fourth Amendment. The prevailing view, however, is that such a warrant provision may be upheld under limited circumstances. * * * Where there is probable cause to support the search of every person within the warrant's scope, it will not be held invalid. * * *[22]
 {¶ 35} "Nonetheless, a warrant should still be considered too general if it subjects to search or seizure individuals against whom no probable cause exists. In this regard, the purposes of the particularity requirement and the probable cause requirement intersect. The United States Supreme Court has explained that `by limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.'[23]
Thus, the requirement of specificity tailors the authority of a warrant so that those against whom no suspicion lies will remain outside its scope.
 {¶ 36} "Accordingly, an `all persons' clause may still be `carefully tailored to its justifications' if probable cause to search exists against each individual who fits within the class of persons described in the warrant. The controlling inquiry is whether the requesting authority has shown probable cause that every individual on the subject premises will be in possession of, at the time of the search, evidence of the kind sought in the warrant. If such probable cause is shown, an `all persons' provision does not violate the particularity requirement of the Fourth Amendment."[24]
 {¶ 37} In outlining the criteria to be examined in order to determine if a search warrant is sufficiently detailed to provide probable cause to search all occupants at a given location, the Ohio Supreme Court adopted the factors set forth by the New York Court of Appeals in People v. Nieves:[25]
 {¶ 38} "An application for this type of warrant must be subjected to rigid scrutiny by the independent Magistrate. It must carefully delineate the character of the premises, for example, its location, size, the particular area to be searched, means of access, neighborhood, its public or private character and any other relevant fact. It must specifically describe the nature of the illegal activity believed to be conducted at the location, the number and behavior of persons observed to have been present during the times of day or night when the warrant is sought to be executed.
 {¶ 39} "The application should also state whether any person apparently unconnected with the illegal activity has been seen at the premises. The warrant itself must limit the locus of the search to the area in which the criminal activity is believed to be confined and, according to the circumstances, may also specify the time for the search.
 {¶ 40} "In determining the reasonableness of a particular warrant application, it is appropriate to consider the necessity for this type of search, that is, the nature and importance of the crime suspected, the purpose of the search and the difficulty of a more specific description of the persons to be searched. The risk that an innocent person may be swept up in a dragnet and searched must be carefully weighed."[26]
 {¶ 41} As with any search warrant probable-cause determination, the established rules do not establish a rigid, hyper-technical test to be used by issuing magistrates, but provide guidance for common-sense decision making.[27]
 {¶ 42} In State v. Kinney, supra, the Ohio Supreme Court affirmed the issuance of an "all persons" search warrant based on the following facts:
 {¶ 43} "On February 23, 1996, police executed (at 673 E.92nd Street, Upstairs — North, number 3 in Cleveland) the February 22, 1996 search warrant, seized contraband, and arrested `Big Nate.' Five days later on February 28, 1996, Detective Ehrbar's partner, Detective Thomas B. Parkinson of the Cleveland Police Narcotics Unit obtained a second search warrant for the same apartment. In his supporting affidavit, Detective Parkinson informed the issuing court of the following matters giving probable cause for the search. Parkinson had twenty-eight years' experience with the Cleveland Police Department, including fifteen years as a detective assigned to the narcotics unit. Parkinson stated that on or about February 23, 1996, a search warrant was executed at the above-described premises. Further, Parkinson averred that cocaine and contraband were seized and one individual (`Big Nate,' a.k.a. Nathaniel Braxton) was arrested. In addition, Parkinson stated that within the past twenty-four hours, he was contacted by a CRI who had always proven to be reliable in the past; the CRI told him that within the past forty-eight hours, `Big Nate' had contacted the CRI and indicated that he wanted to sell cocaine. Based upon this affidavit, the reviewing court issued a second search warrant for the same apartment authorizing a search of the `premises, common areas, curtilage, persons, and containers therein.'"[28]
 {¶ 44} In arriving at the conclusion that the affidavit of Detective Parkinson supported the issuance of a search warrant authorizing the search of all persons present at the subject premises, the Ohio Supreme Court, in Kinney, placed great weight on the fact that the CRI supplying information to justify the search had been contacted by a drug dealer ("Big Nate") who had been arrested five days prior at the same location for trafficking in drugs, and had contacted the CRI after his initial arrest and offered to sell him cocaine. The fact that Big Nate, at the location where he was originally arrested, was continuing his criminal enterprise, provided the Kinney Court with sufficient evidence to support the issuing magistrate's finding of probable cause to believe that no innocent persons would likely be found at the premises.[29] As the Court stated, "Clearly, even the first search did not deter further drug activity on the premises. Therefore, there was an overwhelming probability that anyone present possessed crack/cocaine or other contraband."[30] The affidavit of Officer Giotta clearly indicated that it was likely that drug sales had taken place at an apartment at 1722 E. 133rd Street. There was, however, no evidence to indicate that the domicile was being used primarily or exclusively as a "crack house" or probable cause that every person in the apartment at the time of the search would be in possession of drugs. No information is contained in the affidavit about who the occupant(s) of the apartment were, or might be, except that a male of unidentified race had sold the CRI $20 worth of cocaine. It failed to address the Nieves requirements that lessen the "risk that an innocent person may be swept up in a dragnet and searched." Officer Gioitta's affidavit does not supply any information from which a reviewing magistrate could find probable cause to believe that all persons found at the apartment would likely be engaged in a criminal enterprise, justifying the sanction of an "all persons" search.
 {¶ 45} The search warrant affidavit established that Julius's pre-trial motion to suppress would have been granted, had her trial lawyer attacked its sufficiency, and its inclusion in the record was necessary for the purpose of appellate review. Accordingly, it was error to find that Julius's trial lawyer's omissions met an objective standard of reasonableness and that despite failing to introduce Officer Gioitta's affidavit at the suppression hearing, the results of trial resulting in her conviction for trafficking in drugs would not have been any different, had the affidavit been introduced. We find that, at trial, Julius did not receive effective assistance of counsel as guaranteed by the Sixth Amendment and find this assignment of error has merit.
Judgment reversed and case remanded.
It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, J., DISSENTS WITH NO OPINION.
JAMES D. SWEENEY, P.J., CONCURS IN JUDGMENT ONLY WITH SEPARATEOPINION ATTACHED.
[1] State v. Julius (Sep. 13, 2001), Cuyahoga App. No. 78620.
[2] Id.
[3] State v. Perry (1967), 10 Ohio St.2d 175, 226 N.E.2d 104.
[4] State v. Cole (1982), 2 Ohio St.3d 112, 443 N.E.2d 169.
[5] State v. Smith (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128.
[6] Upon execution of the warrant at the premises, Julius was searched, and police recovered a $20 bill they had provided to a confidential, reliable informant who had earlier made a controlled buy of one rock of crack cocaine from Julius.
[7] See State v. Julius I.
[8] State v. Milanovich (1975), 42 Ohio St.2d 46, 325 N.E.2d 540, paragraph one of the syllabus.
[9] State v. Kapper (1983), 5 Ohio St.3d 36, 37-38, 5 Ohio B. 94,448 N.E.2d 823.
[10] Milanovich, supra, paragraph 2 of the syllabus. See also R.C.2953.21(D).
[11] (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.
[12] Id. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
[13] Id. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
[14] State v. Sanders (2001) 92 Ohio St.3d 245, 273, 750 N.E.2d 90,123. (Internal citation omitted.)
[15] State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
[16] Strickland, supra at 694, 104 S.Ct. at 2068,80 L.Ed.2d at 698.
[17] State v. Sanders, supra.
[18] State v. Jackson (1980), 64 Ohio St.2d 107, 413 N.E.2d 819.
[19] See Stanford v. Texas (1965), 379 U.S. 476, 482-486,85 S.Ct. 506, 510-512, 13 L.Ed.2d 431, 435-437.
[20] State v. Robinette (1997), 80 Ohio St.3d 234, 238, 685 N.E.2d 762,766.
[21] State v. Kinney (1998), 83 Ohio St.3d 85, 88, 698 N.E.2d 49,52.
[22] State v. Kinney, supra, at 90, 698 N.E.2d 49, 53-54.
[23] Maryland v. Garrison (1987), 480 U.S. 79, 84, 107 S.Ct. 1013,1016, 94 L.Ed.2d 72, 80.
[24] State v. Kinney, supra, at 91-92, 698 N.E.2d at 54.
[25] (1975), 36 N.Y.2d 396, 369 N.Y.S.2d 50, 330 N.E.2d 26.
[26] State v. Kinney, supra, at 95-96,698 N.E.2d at 56-57, quoting People v. Nieves, supra,36 N.Y.2d at 404-405, 369 N.Y.S.2d at 60-61, 330 N.E.2d at 34.
[27] See State v. George (1989), 45 Ohio St.3d 325,544 N.E.2d 640, paragraph one of the syllabus.
[28] State v. Kinney, supra, at 85-86, 698 N.E.2d 49.
[29] State v. Kinney, supra, at 94, 698 N.E.2d 49.
[30] State v. Kinney, supra, at 90, 698 N.E.2d 49.