People v Trulove (2025 NY Slip Op 01178)

People v Trulove

2025 NY Slip Op 01178

Decided on February 27, 2025

Appellate Division, First Department

Higgitt, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 27, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Bahaati E. Pitt-Burke John R. Higgitt LlinÉt M. Rosado Marsha D. Michael

Index No. 3145/14|Appeal No. 3458|Case No. 2018-5006|

[*1]The People of the State of New York, Respondent,
v
David Trulove, Defendant-Appellant.

Defendant appeals from the judgment of Supreme Court, Bronx County (Ralph Fabrizio, J.), rendered May 8, 2017, convicting him, upon his plea of guilty, of attempted criminal possession of a weapon in the second degree, and sentencing him to 5 years of probation.

Twyla Carter, The Legal Aid Society, New York (Katheryne M. Martone of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Amir H. Khedmati and Gamaliel Marrero of counsel), for respondent.

Higgitt, J. 

Defendant appeals from the judgment of Supreme Court, Bronx County (Ralph Fabrizio, J.), rendered May 8, 2017, convicting him, upon his plea of guilty, of attempted criminal possession of a weapon in the second degree, and sentencing him to 5 years of probation.
Twyla Carter, The Legal Aid Society, New York (Katheryne M. Martone of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Amir H. Khedmati and Gamaliel Marrero of counsel), for respondent.
Higgitt, J.
Defendant pleaded guilty to attempted criminal possession of a weapon in the second degree in satisfaction of a multi-count indictment. An invalid appeal waiver and a suspect description of the premises to be searched calling into question the validity of a search warrant compel us to direct further proceedings.
I.
On August 20, 2014, the People applied for a search warrant from the Criminal Court of the City of New York, Bronx County, to allow the police to search defendant's bedroom in an apartment at 955 Bruckner Boulevard. The judge conducted an in camera hearing of the police officer, who was not independently familiar with the interior of the building at 955 Bruckner Boulevard, and a confidential informant, who professed familiarity with the building.
At the outset of the hearing, the police officer signed an affidavit before the court attesting to information provided to the officer by the confidential informant. The police officer recounted that, on two dates, the confidential informant "went to 955 Bruckner Boulevard, first floor apartment (first bedroom on right, tan door, not marked)," where, once inside the apartment, the confidential informant saw defendant in possession of a semi-automatic handgun.
The confidential informant testified that there was one apartment on the first floor, which had no marking on its door. The confidential informant further testified that the apartment had a number of bedrooms; upon entering the apartment, defendant's bedroom was the first door on the right and the bedroom door was tan. The confidential informant's testimony demonstrated that a semi-automatic handgun would be found in that bedroom.
At the conclusion of the confidential informant's testimony, the court signed the search warrant, authorizing the police to search "955 Bruckner Boulevard, first floor apartment (first bedroom on right, tan door, not marked)" and seize a semi-automatic handgun.
On August 27, 2014, the police officer who procured the search warrant executed it at the building identified in the warrant. The police officer entered an apartment on the right side of the first floor, accessed a bedroom in that apartment, and recovered a loaded semi-automatic pistol and a magazine containing several rounds of ammunition. The briefs indicate that the apartment door the police officer entered was one of two doors on the first floor, and that door had a "1" marking on it.
Defendant was arrested and indicted for numerous weapons charges.
In [*2]his omnibus motion, defendant sought, among other things, suppression of the pistol, magazine, and ammunition on the ground that the search warrant was invalid and that the search was therefore unconstitutional. Defendant argued that the search warrant did not describe the premises to be searched with the requisite particularity required by the Federal and New York State Constitutions.
The omnibus motion was supported by an affirmation from an investigator who visited 955 Bruckner Boulevard in February 2015. The investigator attested that there are two residences on the first floor: one with a "1" on its door and the other with no clear marking on its door. The investigator took five color photographs of 955 Bruckner Boulevard and included them with his affirmation. One photograph is of the exterior door of the premises; another photograph depicts the door leading from the premises' vestibule into the building itself; and the remaining photographs cumulatively show two apartment doors on the first floor. Both doors are seemingly the same nearly white color (and neither appears to be tan), with one at the end of a short hallway and the other at the front of that hallway on its right side (close to the vestibule door). The door at the end of the short hallway has no numerical or alphabetical marking, while the door on the right side has a "1" marking on it.[FN1]
As is pertinent to this appeal, Supreme Court denied that branch of defendant's motion seeking suppression of the pistol, magazine, and ammunition on the basis that the search warrant did not satisfy the particularity requirements of the Federal and State Constitutions.
II.
On March 23, 2017, defendant pleaded guilty to attempted criminal possession of a weapon in the second degree in satisfaction of the indictment. The plea colloquy included a brief discussion of an appeal waiver. The court stated, "One of the conditions consistent with the plea is that you waive your right to take an appeal on this case and the condition of making this [plea] offer. Do you understand that?" The court next stated, "And you are giving up your right to appeal, to have a higher court review any decision made by a Judge following any hearing or any motion prior to today; and any right to challenge the sufficiency of this plea proceeding and the right to challenge your sentence. Do you understand that?" Defendant responded affirmatively to both questions. Toward the end of the colloquy, the court asked defendant to sign a written waiver of the right to appeal.[FN2] The court did not confirm that defendant had read the written waiver, did not confirm that defendant had discussed the written waiver with counsel, and did not confirm that defendant understood the written waiver. The plea was entered, and sentence was subsequently imposed.
This appeal ensued.
III.
Defendant contends that the appeal waiver is invalid because the plea court mischaracterized the appellate rights subject to waiver; suggested that, by pleading [*3]guilty, defendant automatically forfeited his right to appeal; and failed to confirm that defendant read, discussed with counsel, or understood the written waiver. According to defendant, the putative appeal waiver does not foreclose his one substantive appellate claim: that the search warrant is invalid because it did not describe the premises to be searched with the particularity required by the Federal and State Constitutions, and, resultantly, that the fruits of the search must be suppressed.[FN3] Defendant insists that the evidence submitted in support of his motion demonstrated that, while the search warrant authorized the search of an unidentified first floor apartment, there are two apartments on the first floor, requiring the police to employ discretion in deciding which apartment to search.
The People argue that defendant validly waived his right to appeal and, on the merits, that the description in the warrant was sufficiently particular and the warrant therefore was valid. In the People's view, during the in camera hearing, the confidential informant mistakenly referred to the vestibule door as the apartment door, and to the apartment door as a bedroom door, leading to a "minor" discrepancy in the warrant regarding the identity of the premises to be searched.[FN4] This minor discrepancy, argue the People, does not undermine the description of the premises in the warrant, because the description led the police officer to defendant's apartment.
IV.
A.
We address first the issue of whether defendant validly waived his right to appeal, because he tacitly acknowledges that a valid waiver would bar review of his claim that the search warrant is invalid.
Appellate courts in New York are frequently called on to review the validity of appeal waivers given in conjunction with criminal pleas.[FN5] The broad discretion trial courts are afforded in eliciting appeal waivers invites myriad idiosyncratic approaches on the part of trial courts to obtain appeal waivers. Predictably, the varying approaches to procuring appeal waivers results in challenges by defendants to the efficacy of the waivers that, ironically, are designed, at least in part, to reduce litigation (see People v Thomas, 34 NY3d 545, 557 [2019], cert denied 589 US __, 140 S Ct 2634 [2020]).
In reviewing the specific appeal waiver before us, we are guided by several key principles identified by the Court of Appeals.
First, under the totality of the circumstances, the defendant must understand the nature of the appellate rights that are being waived (see Thomas, 34 NY3d at 559; People v Sanders, 25 NY3d 337, 341 [2015]). That is to say, all of the relevant facts and circumstances must reveal a knowing and voluntary waiver (see Thomas, 34 NY3d at 563; People v Lopez, 6 NY3d 248, 256 [2006]). The following considerations inform the totality-of-the-circumstances inquiry: the nature and terms of the waiver; the age and background of the defendant; the defendant's consultation with counsel; the [*4]defendant's on-the-record acknowledgments of understanding the consequences of waiving the right to appeal; a written appeal waiver that supplements or clarifies the court's oral advice; and the defendant's experience, if any, with the criminal justice system (Thomas, 34 NY3d at 559-560; Sanders, 25 NY3d at 340-341). The trial court bears the paramount responsibility "to ensure that each defendant's 'full appreciation of the consequences' and understanding of the terms and conditions of the plea and appeal waiver are 'apparent on the face of the record'" (Thomas, 34 NY3d at 560 [citation omitted]; see Sanders, 25 NY3d at 340; Lopez, 6 NY3d at 256).[FN6]
Second, a defendant cannot waive appellate review of certain fundamental issues of which society demands correct resolutions. These include a constitutional speedy trial claim, a challenge to the legality of a sentence, a claim that the defendant is incompetent to stand trial, and an assertion that a plea is not voluntary, knowing, and intelligent (see Thomas, 34 NY3d at 558-559; People v Callahan, 80 NY2d 273, 280 [1992]).
Third, an appeal waiver is separate and distinct from the Boykin v Alabama (395 US 238, 242-243 [1969]) constitutional rights extinguished automatically by virtue of a guilty plea (Thomas, 34 NY3d at 561-562; Lopez, 6 NY3d at 256). Boykin rights are forfeited by operation of law as a result of a guilty plea, while the waiver of the right to appeal is a voluntary, intentional relinquishment of a right that would otherwise survive the plea (see Thomas, 34 NY3d at 561). A plea court's conflation of the separate and distinct right to appeal with the rights automatically extinguished as a result of a plea may render the appeal waiver invalid (see Thomas, 34 NY3d at 561-563).
Applying these principles, we cannot enforce the putative appeal waiver before us. The plea colloquy contained several defects. It did not make clear, expressly or tacitly, that the right to appeal was separate and distinct from the Boykin rights defendant was automatically forfeiting with the plea; the colloquy suggested that the appeal waiver was absolute, offering no clue that some core appellate claims would survive; and, relatedly, the colloquy wrongly indicated that no appeal was permissible on the fundamental issues of whether the plea was entered into knowingly and voluntarily, and whether the sentence was legal.
The written waiver cannot save the oral appeal waiver. The plea court did not confirm that defendant had read the written waiver; the court did not confirm that defendant had discussed the written waiver with counsel; and the court did not confirm that defendant understood the written waiver (see People v Joyce, 226 AD3d 541, 541 [1st Dept 2024], lv denied 41 NY3d 1019 [2024]; People v Bonilla, 211 AD3d 614, 616 [1st Dept 2022]; People v Thorne, 207 AD3d 73, 77 [1st Dept 2022]). Additionally, defendant's prior criminal pleas, which occurred many years before the plea in this case, do not, in [*5]light of the other circumstances, persuade us that there was a knowing and voluntary waiver.
The narrowing of the critical right of first-tier direct appeal engendered by an appeal waiver can only be effected by a knowing and voluntary waiver. A plea court, charged with the responsibility to ensure that a defendant's understanding of the appeal waiver is apparent on the face of the record, cannot handle that waiver in a perfunctory manner; rather, the court must address the waiver carefully and with clarity.[FN7] For our part, we are responsible for reviewing the record to ensure a defendant's appeal waiver reflects a knowing and voluntary choice, and we will not strain to salvage a putative appeal waiver whose sufficiency we cannot endorse. Here, based on the totality of the circumstances, the record does not reflect that defendant understood the nature of the appellate rights he was waiving, and, therefore, there was no knowing and voluntary waiver of his right to appeal.
Because the putative appeal waiver is not enforceable, we consider the merits of defendant's contention that the search warrant is invalid for want of compliance with the particularity requirements of the Federal and State Constitutions.
B.
The Fourth Amendment to the Federal Constitution provides, in pertinent part, that "no warrants shall issue[] but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized" (US Const, 4th Amend).[FN8]
"Particularity is required in order that the executing officer can reasonably ascertain and identify the persons or places authorized to be searched and the things authorized to be seized. To protect the right of privacy from arbitrary police intrusion, the core of the Fourth Amendment, nothing should be left to the discretion of the searcher in executing the warrant" (People v Nieves, 36 NY2d 396, 401 [1975] [internal citations and quotation marks omitted]).
Thus, "[t]o meet the particularity requirement, the warrant's directive must be specific enough to leave no discretion to the executing officer" (People v Brown, 96 NY2d 80, 84 [2001] [citations and internal quotation marks omitted]).
In gauging whether a search warrant satisfies the particularity requirement of the Federal Constitution, the court must view the description of the premises to be searched with common sense: the descriptions in the warrant, the affidavit supporting the warrant application, and the testimony given in the in camera hearing must be sufficiently definite to enable the police to identify the place that the judge determined should be searched (Nieves, 36 NY2d at 401-402).[FN9] "In reviewing the validity of a search warrant to determine . . . whether it contained a sufficiently particular description of its target, the critical facts and circumstances for the reviewing court are those which were made known to the issuing [judge] at the time the warrant application was determined" (id. [*6]at 402; see People v Rainey, 14 NY2d 35, 38-39 [1964]; People v Otero, 177 AD2d 284, 285-286 [1st Dept 1991], lv denied 79 NY2d 862 [1992]).
Here, issues of fact exist necessitating a hearing (see CPL 710.60[4] [requiring the court to conduct a hearing on a suppression motion if not summarily granted or denied]; see also People v Otero, 151 AD2d 236 [1st Dept 1989]). The description of the premises "955 Bruckner Boulevard, first floor apartment (first bedroom on right, tan door, not marked)" is sufficiently particularized on its face (e.g., it is not patently overbroad and does not list a nonexistent premises), and the description matched the facts available to the police officer and the warrant court (see People v Duval, 36 NY3d 384, 389-390 [2021]).
However, defendant's submissions in support of his omnibus motion call into question whether the search warrant contains a misdescription of the premises to be searched, and, if there is a misdescription, whether it renders the warrant invalid. Specifically, defendant's omnibus motion submissions raise a question of fact as to whether, based on what the police officer knew or should have known about the premises when the search warrant was sought, the warrant's description of the target premises was accurate (id. at 390 [emphasis added]).[FN10] Unlike the defendant in People v Duval, defendant here submitted evidence (in particular, the affirmation of the investigator who visited the premises and the photographs of 955 Bruckner Boulevard taken by the investigator) about the "actual conditions of the premises" in support of his omnibus motion (cf. id. at 391-392). Additionally, assuming there was a misdescription of the premises to be searched, a question of fact exists as to whether there was no reasonable possibility that the wrong premises would have been searched (see People v Gramson, 50 AD3d 294, 295 [1st Dept 2008], lv denied 11 NY3d 832 [2008]; People v Rodriguez, 254 AD2d 95, 95 [1st Dept 1998]; People v Graham, 220 AD2d 769, 772 [2d Dept 1995], lv denied 89 NY2d 942 [1997]).
We cannot resolve the issues raised by defendant's omnibus motion submissions without a hearing (see CPL 710.60[4]; see also CPL 710.60[2] [delineating when suppression motion must be granted summarily], [3] [delineating when suppression motion may be denied summarily]). This is not a situation where it is plain from the existing record that there was no reasonable possibility that the wrong premises would be searched regardless of any misdescription (see Gramson, 50 AD3d at 295; Rodriguez, 254 AD2d at 95; Graham, 220 AD2d at 772). Nowhere in the warrant, or in the testimony of the confidential informant or the affidavit of the police officer, is there a correct description of the premises to be searched (cf. Gramson, 50 AD3d at 295; Rodriguez, 254 AD2d at 95; Graham, 220 AD2d at 770). Additionally, the warrant did not state that it was defendant's premises that were to be searched (cf. Gramson, 50 AD3d at 295; Graham[*7], 220 AD2d at 771). Lastly, although the police officer who procured the warrant was the one who executed it, he lacked personal knowledge of the place to be searched and was acting upon only the information provided by the confidential informant (cf. Rodriguez, 254 AD2d at 95; Graham, 220 AD2d at 772).
The People's explanation for the misdescription (or imprecise description), laid out in footnote 4, may be correct. But whether it is correct and, if it is, whether the description nevertheless is sufficiently particular, are questions for the hearing court. We note that the People's explanation is founded on a factual assumption that the limited record before us does not support: that one of the two doors on the first floor was tan colored. The color photographs in the record before us depict two doors of the same or similar nearly white color, neither appearing to be tan.
V.
We previously denied defendant's motion for an order unsealing the affidavit and any documents or transcripts related to the warrant application. We have considered defendant's current arguments as to how the failure to provide him with a completely unredacted copy of such materials may violate his due process rights and find such arguments to be unavailing.
VI.
Accordingly, the appeal from the judgment of the Supreme Court, Bronx County (Ralph Fabrizio, J.), rendered May 8, 2017, convicting defendant, upon his plea of guilty, of attempted criminal possession of a weapon in the second degree, and sentencing him to 5 years of probation, should be held in abeyance, and the aspect of the order adjudicating the suppression motion that denied suppression relief on the basis that the search warrant failed to describe the premises to be searched with the requisite particularity vacated, on the law and the facts, and the matter remanded for a hearing and determination on the motion.
Appeal from judgment, Supreme Court, Bronx County (Ralph Fabrizio, J.), rendered May 8, 2017, held in abeyance, and the aspect of the order adjudicating the suppression motion vacated, on the law and the facts, and the matter remanded for a hearing and determination on the motion.
Opinion by Higgitt, J. All concur.
Manzanet-Daniels, J.P., Pitt-Burke, Higgitt, Rosado, Michael, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 27, 2025

Footnotes

Footnote 1: The People have not challenged the admissibility of the investigator's affirmation or the photographs he took.

Footnote 2: The written appeal waiver provides,
"I, David Trulove, the defendant in the above-captioned matter, in addition to pleading guilty, hereby waive my right to appeal. I understand that my right to appeal is separate and distinct from the rights automatically forfeited upon a guilty plea. I understand that the right to appeal would have allowed me, with the assistance of an attorney, to have a higher court review my conviction and sentence, particularly the excessiveness of my sentence, the resolution of any suppression motion that I may have made, and whether my statutory right to a speedy trial has been violated. I am waiving that right to appeal as a condition of this plea. I also understand that, despite this waiver, I will nevertheless retain my right to raise certain limited issues on appeal, including constitutional speedy trial; the legality of the sentence; my competency to stand trial; the court's failure to determine whether I am an eligible youth entitled to youthful offender status; the validity of my guilty plea; and the validity of this waiver.
"I have had an opportunity to discuss these matters with my attorney and any questions I may have had have been answered to my satisfaction. I further understand that if the waiver of my right to appeal has not been explained to my satisfaction by the Court, I am free to ask for further clarification from the Court or my attorney . . ., or both, before signing this document."

Footnote 3: Defendant also maintains that he was denied due process on this appeal because the search warrant application is partially sealed, and appellate counsel is therefore inhibited from evaluating and raising potential issues relating to the issuance of the search warrant on appeal.

Footnote 4: The People offer the following explanation for the confidential informant's "mistake" in describing the premises to be searched:
"The confidential informant testified that there was one apartment on the first floor and that defendant's bedroom was the first door on the right upon entry. Indeed, there was only one room on the first floor that matched that description. While the informant may have mistakenly referred to the vestibule door as the apartment door, and to defendant's apartment door[] as defendant's bedroom door, the photo evidence clearly shows that upon entering the vestibule door on the first floor, there is one door at the end of the hallway, and only one tan door on the right hand side. . . . The officers only searched the tan door on the right hand side where a gun and ammunition were recovered inside defendant's bedroom".

Footnote 5: "Appeal waiver" and "waiver of the right to appeal" are shorthand references to the significant narrowing of the issues that a defendant may raise on appeal; an appeal waiver or waiver of the right to appeal cannot serve as an absolute bar to appellate review (People v Thomas, 34 NY3d 545, 559 [2019], cert denied 589 US __, 140 S Ct 2634 [2020]).

Footnote 6: The Court of Appeals has highlighted that a court must scrutinize the precise language of the colloquy used in eliciting a waiver. Thus, the rights surrendered by appeal waivers are too important to be handled in a "perfunctory step" (Thomas, 34 NY3d at 560-561).

Footnote 7: However routine the exercise of taking pleas may be to a trial court, the court should resist cursory treatment of an individual plea proceeding. Each defendant, and the circumstances surrounding that defendant's plea, are unique, and each plea is consequential to one degree or another.

Footnote 8: Our State Constitution contains an identical provision (NY Const, art I, § 12).

Footnote 9: Both defendant and the People contend we should consider the affidavit of the police officer and the in camera hearing testimony in analyzing whether the description of the premises was sufficiently particular (cf. People v Duval, 36 NY3d 384, 389 [2021]). As discussed above, though, there is no material variance in the description of the premises between the warrant, the affidavit and the confidential informant's testimony.

Footnote 10: A search warrant may be invalidated where the applicant should have known, from reasonable investigation, that the warrant's description was inaccurate (see Duval, 36 NY3d at 390, citing Maryland v Garrison, 480 US 79, 85 [1987]).