■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERRENCE Q. WILLIAMS, Appellant. [726 NYS2d 740] —Lahtinen, J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered January 15, 1999, (1) convicting defendant upon his plea of guilty of the crimes of criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fifth degree and resisting arrest, and (2) upon a verdict convicting defendant of the crime of robbery in the second degree.

On January 30, 1998, defendant was at the residence of Cindy Curry in the Village of Endicott, Broome County, when members of the Endicott Police Department executed a search warrant which authorized them to search Curry's residence and the person of anyone found there. During the course of a strip-search of defendant, a police officer observed a foreign object protruding from defendant's rectum, and when the police attempted to retrieve it defendant resisted. After subduing defendant, the police recovered a plastic bag containing 11 grams of crack cocaine from the floor directly underneath defendant. Defendant was arrested and subsequently indicted for criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fifth degree and resisting arrest (hereinafter indictment No. 1). Defendant eventually pleaded guilty to all three charges in indictment No. 1, County Court refusing to commit to a sentence due to a pending robbery indictment.

The unrelated indictment charging defendant and others with robbery in the second degree (hereinafter indictment No. 2) resulted from his actions in the City of Binghamton, Broome County, on June 9, 1998 wherein it was alleged that defendant, his brother and Derek Carter, acting in concert, forcibly stole property consisting of United States currency from Donald Douglas. Defendant proceeded to trial on this indictment and was convicted.

At a single sentencing hearing, defendant was sentenced as a second felony offender to concurrent indeterminate prison sentences, the largest of which was 4½ to 9 years, on indictment No. 1, and a consecutive, determinate prison sentence of 5 years for his conviction on indictment No. 2. Defendant now appeals.

Defendant's challenge to his conviction on indictment No. 1 centers on his claims that the search warrant application was inadequate and the strip-search that was conducted of his person was unreasonable. Our review of the search warrant application reveals that it establishes probable cause to believe that Curry's residence was being used, by Curry and others, for the sale and distribution of drugs. The application by Endicott Police Officer Edward McCulskey was based on his personal conversation with a previously reliable informant who related hearsay information regarding drug activity at Curry's residence, which was independently corroborated by McCulskey, and a sworn statement from another informant stating that he personally observed drug sales at Curry's residence and had purchased drugs there. Contrary to defendant's argument, we find this information satisfied the standard enunciated in *People v Nieves* (36 NY2d 396) and justified the broad language of the warrant permitting a search of not only the premises, but the persons located there at the time of the execution of the warrant (*see*, CPL 690.15 [2]).

Specifically, we find the first informant's information, corroborated by McCulskey, met the two-prong *Aguilar-Spinelli* test[1] (*see, Spinelli v United States*, 393 US 410; *Aguilar v Texas*, 378 US 108), which requires a search warrant application to demonstrate the veracity or reliability of the source of the information and the basis of the informant's knowledge (*see, People v Griminger*, 71 NY2d 635, 639). Further, the second informant's affidavit alone, relating criminal activity that he personally observed and engaged in at the premises in question, provided the Magistrate with probable cause to sign a warrant authorizing a search of Curry's house (*see, People v Hicks*, 38 NY2d 90). Collectively, the above facts and the permissible inferences to be drawn therefrom provide a sufficient basis for broadening the scope of the search warrant to include "the person of anyone found in said apartment" (*see, People v Nieves, supra; People v Neish*, 232 AD2d 744, 746, *lv denied* 89 NY2d 927).

Defendant's argument that he was unreasonably subjected to a strip search is likewise without merit. The search of defendant's person was authorized by the warrant at issue. Although defendant now asserts otherwise, the record does not reflect that he was subjected to a body-cavity search by the police, nor did he make such claim in his suppression motion. While the foreign object was observed protruding from his

---

1. This test is still applicable in New York (*see, People v Griminger*, 71 NY2d 635, 637; *see also, People v Serrano*, 93 NY2d 73, 78).

rectum, that object, which turned out to be a plastic bag containing crack cocaine, was retrieved from the floor and not from his person.

With respect to indictment No. 2, defendant claims that the disclosure of the Grand Jury testimony of witness Katherine Armstrong to Endicott police officers was unlawful because it violated the statutory requirement of secrecy for Grand Jury proceedings (see, CPL 190.25 [4] [a]; *People v Di Falco*, 44 NY2d 482, 488). Furthermore, defendant claims that because the robbery occurred in Binghamton and was investigated by the Binghamton Police Department, disclosure to the Endicott police officers did not fall within the statutory exception allowing such disclosure to "police officers specifically assigned to the investigation" (CPL 190.25 [4] [a]), thereby impairing the integrity of the Grand Jury process and creating the risk of prejudice to defendant.[2] We disagree. "CPL 210.35 (5) provides that a Grand Jury proceeding is defective when 'the integrity thereof is impaired and prejudice to the defendant may result' " (*People v Huston*, 88 NY2d 400, 409) and we note that this statutory test does not require a showing of actual prejudice (see, *People v Sayavong*, 83 NY2d 702, 711). However, dismissal of an indictment under this statute "should thus be limited to those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the Grand Jury" (*People v Huston, supra*, at 409), a situation we conclude is not present here.

The limited proof in the record which we may properly consider on this issue reveals no prosecutorial wrongdoing or fraudulent conduct. In the first instance, the record reveals that the Grand Jury itself was responsible for recalling Armstrong to testify, not the prosecutor. Secondly, at defendant's trial Armstrong testified, under cross-examination by defense counsel, that the Endicott police did not have knowledge of her Grand Jury testimony prior to talking to her but that she told them what she had said. To the extent that we may even consider Armstrong's undated, unsworn "affidavit" contained in the record as an exhibit to a defense motion to this Court, nothing therein leads us to a different conclusion. Defendant has failed to show that any actions of the prosecutor or his

2. Although the record does not contain any motion papers addressed to the integrity of the Grand Jury proceedings, the People do not argue that defendant failed to preserve the issue by not raising it before County Court (see, *People v Boyer*, 216 AD2d 795, 796, *lv denied* 86 NY2d 840). Defendant's counsel asserts that she made a search for said motion papers but could not locate them. Alternatively, she asks that the matter be remanded to County Court for a reconstruction hearing on the issue.

agents may have potentially prejudiced this Grand Jury requiring dismissal of the indictment or the reconstruction hearing sought by defendant.

In light of Armstrong's return to the Grand Jury, defendant also argues that the prosecutor should have instructed the Grand Jury that legally sufficient evidence (CPL 190.65 [1]) requires the evidence be "competent" and that coerced testimony is not competent and admissible evidence. We find this argument without merit. Further, as we previously noted, Armstrong's additional Grand Jury testimony was not "coerced" by the prosecutor but requested by the Grand Jury itself.

Defendant next argues that his conviction for robbery in the second degree was against the weight of the evidence and based on legally insufficient evidence because the testimony of Armstrong, who was present with him and the others at Douglas' residence during the robbery, was so inconsistent and unworthy of belief that it was unreliable as a matter of law. We find these claims to be without merit.

Douglas, the robbery victim, testified that defendant, defendant's brother, Armstrong and Carter came to his apartment so one of them could get a tattoo, but that shortly after they arrived, Carter grabbed him from behind and began choking him. Immediately before he passed out, Douglas saw defendant and defendant's brother approach him and felt, but did not see, someone going through his pockets. Defendant and the others then left and Douglas discovered that $1,086 in cash that he had in his pocket was gone. Upon his arrest the next day, defendant was found with over $900 in cash and admitted to the police that he was in Douglas' apartment with the others when Douglas was attacked and robbed.

At trial, Armstrong testified on direct examination that she was present with defendant and saw Douglas being choked from behind and defendant going through Douglas' pockets. Defendant's claim that it was Carter who had choked and robbed Douglas, contained in his written statement received in evidence, was obviously rejected by the jury which instead accepted Armstrong's testimony. Such factual determinations are properly the province of the jury and will not be disturbed (see, e.g., People v Smith, 272 AD2d 713, 716, lv denied 95 NY2d 871). Viewing the evidence in the light most favorable to the People, as we must (see, People v Harper, 75 NY2d 313, 316), we find the People's evidence, set forth above, legally sufficient to support defendant's conviction for robbery in the second degree (see, Penal Law § 160.10; People v Williams, 84 NY2d 925, 926; People v Bleakley, 69 NY2d 490, 495; People v Contes, 60 NY2d 620, 621).

Likewise, our independent review of the trial evidence (*see, People v White*, 261 AD2d 653, 656, *lv denied* 93 NY2d 1029) reveals that defendant's robbery conviction is not against the weight of the evidence. Weighing " 'the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley, supra*, at 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62) we do not find the jury's verdict convicting defendant of robbery in the second degree to be clearly unsupported by the record and it thus must remain undisturbed (*see, People v Maxwell*, 260 AD2d 653, 654, *lv denied* 93 NY2d 1004).

Lastly, we find no merit to defendant's claim that he was denied due process (*see, People v Isaacson*, 44 NY2d 511, 520-521) by the actions of the People in relation to indictment No. 2, nor do we find merit in his claim that he received ineffective assistance of counsel, which he raises in his *pro se* supplemental brief. The due process claim warrants no additional discussion. Furthermore, the record reveals that defendant received meaningful representation (*see, People v Benevento*, 91 NY2d 708, 712; *People v Satterfield*, 66 NY2d 796, 799-800) from his defense counsel throughout both criminal proceedings. The alleged shortcomings of his counsel were strategic determinations which do not form the basis for an ineffective assistance of counsel claim (*see, People v Benn*, 68 NY2d 941, 942).

We have reviewed defendant's remaining arguments and find them unavailing.

Crew III, J. P., Peters, Mugglin and Rose, JJ., concur. Ordered that the judgment is affirmed.

