[926 NE2d 1219, 900 NYS2d 715]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT MOTHERSELL, Appellant.

Argued February 16, 2010; decided April 1, 2010

**POINTS OF COUNSEL**

*Law Office of Ameer Benno*, New York City (*Ameer Benno* of counsel), and *Hiscock Legal Aid*, Syracuse (*Mary P. Davison* of counsel), for appellant. The search of Mr. Mothersell's person by police violated his right to be free from unreasonable search and seizure, as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution, and article I,

§ 12 of the New York State Constitution. (*Mapp v Ohio,* 367 US 643; *Coolidge v New Hampshire,* 403 US 443; *Johnson v United States,* 333 US 10; *Illinois v Gates,* 462 US 213; *Walczyk v Rio,* 496 F3d 139; *United States v Martin,* 426 F3d 83; *Steele v United States,* 267 US 498; *United States v Ventresca,* 380 US 102; *Marron v United States,* 275 US 192; *Doe v Groody,* 361 F3d 232.)

*William J. Fitzpatrick, District Attorney,* Syracuse (*James P. Maxwell* and *Brenton P. Dadey* of counsel), for respondent. The police did not violate defendant's constitutional rights when they recovered cocaine from defendant. (*People v Prochilo,* 41 NY2d 759; *People v Tonge,* 93 NY2d 838; *People v Luperon,* 85 NY2d 71; *People v Turriago,* 90 NY2d 77; *People v Dunbar,* 5 NY3d 834; *People v Chilton,* 69 NY2d 928; *People v Roque,* 99 NY2d 50; *People v More,* 97 NY2d 209; *People v Barnville,* 7 Misc 3d 688, 31 AD3d 271, 7 NY3d 809; *People v Giles,* 73 NY2d 666.)

**OPINION OF THE COURT**

Chief Judge LIPPMAN.

The contraband defendant stands convicted of possessing was recovered from his person by means of a strip search conducted on the authority of a warrant purporting to authorize the search of all persons present at the time of its execution. Defendant now contends, as he did before the County Court and the Appellate Division, that there was not a sufficient predicate for issuance of the warrant and that, even if properly issued, it did not authorize the strip search performed on him. We agree with both of these contentions.

In his suppression motion defendant specifically alleged that there was no adequate factual basis for the all-persons-present warrant and that

> "[e]ven if the warrant were to be viewed as allowing [him] to be seized and searched during [its] execution . . . , it was a violation of [his] rights under the Fourth Amendment to the US Constitution and Article 1, section 12 of the New York Constitution to be subjected to a body cavity search based solely on the 'all persons present' warrant and his mere presence at the target residence."

The People responded that the search warrant was validly issued and properly executed. They characterized the search of defendant as a "strip search" that did not involve a cavity search.

In ruling upon the first branch of the motion, the court relied on the affidavit submitted in support of the warrant application, the sole basis for the warrant's issue. According to the affidavit, two controlled purchases of cocaine had been made by known and reliable informants at the target premises, the first floor front apartment at 114 Isabella Street, a two-story residential building. The first purchase was reportedly made from a male resident of the apartment, referred to only as "Tom," on February 2, 2006; the second purchase, from an "unknown male," took place weeks later, "during the week ending 25 February 2006." The amount of cocaine purchased on each occasion is not stated. Based on these two transactions, the motion court found that "not only was [probable cause established] to believe that the residence of 114 Isabella Street, First Floor Front Apartment, was being used for the sale and distribution of drugs but also that anyone present therein was involved in the ongoing illegal activity" and, accordingly, that the applicable standard for issuance of an all-persons-present warrant as set forth in *People v Nieves* (36 NY2d 396 [1975]) had been met. The court directed a hearing upon the disputed factual issue raised in connection with the motion's second branch, namely, whether there had been a body cavity search, as defendant alleged, or merely a strip search, as the People contended.

At the hearing, one of the officers who executed the warrant testified that he searched defendant solely pursuant to what he understood to be the warrant's authority; he acknowledged that he had no independent basis for an arrest and, in fact, said that defendant was not under arrest at the time of the search. He also stated that he had taken part in the execution of hundreds of all-persons-present warrants and that persons were routinely strip-searched pursuant to such warrants and required to facilitate the examination of their anal and genital cavities. The officer said that defendant was subjected to such a search, during which he was required to lift his scrotum and then to bend over to expose his anal cavity. The incriminating evidence was discovered in the course of the latter exercise.

The court denied suppression, finding that although the search at issue had been "more intrusive than merely a strip search," and involved "the conducting of a visual body cavity search," it was authorized by the all-persons-present warrant and had been reasonably conducted.

Upon the denial of his suppression motion, defendant entered a plea to criminal possession of a controlled substance in the

fifth degree. The Appellate Division affirmed the ensuing judgment of conviction, stating "the warrant application established probable cause to believe that the apartment was being used for the sale of controlled substances and that anyone present was involved in the ongoing illegal activity" (59 AD3d 995, 996 [2009] [citations and internal quotation marks omitted]). In support of this conclusion, the Court cited several Appellate Division decisions in which all-persons-present warrants had evidently been upheld on predicates not dissimilar to the one at bar (see People v Neish, 232 AD2d 744, 746 [1996], lv denied 89 NY2d 927 [1996]; People v Williams, 284 AD2d 564, 565 [2001], lv denied 96 NY2d 909 [2001]). The present appeal from the Appellate Division decision and order affirming defendant's conviction is before us by leave of a Judge of this Court (12 NY3d 857 [2009]).

Preliminarily, while the People argue that the issues defendant would have us review are not preserved, both of the issues defendant has briefed to us were clearly raised and argued on the suppression motion and before the Appellate Division, which, it may be noted, addressed both issues on the merits without invoking its interest of justice jurisdiction. Nor is it the case that we are being asked by defendant to differ with the motion court's now affirmed factual findings; the plainly reviewable issue posed is rather whether those facts will support the legal conclusion that the search of defendant was constitutional.

The Fourth Amendment to the Federal Constitution as made applicable to the states by the Fourteenth Amendment, and article I, § 12 of our New York State Constitution speak with one voice in requiring that warrants "particularly describ[e] . . . the persons . . . to be seized." It is plain that the warrant here at issue does not particularly describe anyone. That, however, is not where the present inquiry ends because CPL 690.15 (2) states that "[a] search warrant which directs a search of a designated or described place, premises or vehicle, may also direct a search of any person present thereat or therein," and in People v Nieves (36 NY2d 396 [1975]) this provision was upheld as against the claim that it was facially unconstitutional.

At the time of Nieves, the constitutionality of CPL 690.15 (2), enacted only five years before, had been seriously questioned (36 NY2d at 404) and it was evident that the statute as written was potentially overbroad in its application (id.). We nonetheless reasoned that there could be circumstances in which a showing of probable cause to search a place would also afford

probable cause to infer that everyone present at the place had upon their persons the items specified in the warrant, and thus, that the statute was capable of application without constitutional offense. We recognized, however, the exacting nature of the showing necessary to justify the inferences essential to the statute's constitutionally permissible use, and summarized the "carefully circumscribed," indeed "severely limited," grounds upon the search of an individual identified in the authorizing warrant only as "a[ ] person present" could be performed:

> "The facts made known to the Magistrate and the reasonable inferences to which they give rise, must create a substantial probability (see *People v Baker*, 30 NY2d 252, 259) that the authorized invasions of privacy will be justified by discovery of the items sought from all persons present when the warrant is executed. If this probability is not present, then each person subject to search must be identified in the warrant and supporting papers by name or sufficient personal description" (*id.* at 404-405).

This standard was not met in *Nieves*. The any-person-present warrant there at issue was premised upon facts indicating that the place to be searched, a restaurant, was being used to conduct illegal gambling transactions and to store the records of those transactions. But the locus of the search had not been shown limited to criminal activity and, accordingly, the requisite probability that anyone at the restaurant would be there for an illicit purpose and would have upon his or her person evidence probative of the alleged ongoing illegality was not made out. Indeed, notwithstanding our recognition in *Nieves* of the possibility of a valid any-person-present warrant, it does not appear that this Court has ever actually sustained such an instrument. While such a case may well come before us, it is not this one.

It is true that the location specified in the present warrant was not open to the public as was the restaurant in *Nieves*, but, as we noted in *Nieves*, that the place of a warrant's execution is not publicly trafficked, while relevant, does not suffice to demonstrate the selectivity necessary to the warrant's legality (*id.* at 405 n 4); innocent persons are commonly encountered in private spaces, such as homes, and, in fact, possess in those spaces the most constitutionally compelling expectations of privacy (*see e.g. Payton v New York*, 445 US 573, 587 [1980], quoting *Dorman v United States*, 435 F2d 385, 389 [DC Cir 1970] ["Freedom from intrusion into the home or dwelling is

the archetype of the privacy protection secured by the Fourth Amendment"]). The private nature of a place, then, does not of its own argue persuasively in support of a warrant indiscriminately permitting the seizure and search of all persons found there at the time of its execution.

Rather than adopt such a singular and inadequate criterion for judging the validity of an all-persons-present warrant, the *Nieves* court set forth numerous other factors necessarily to be considered in the discharge of a court's duty to subject an application seeking such a warrant to "rigid scrutiny" (36 NY2d at 404). Among these were the character of the premises, the nature of the illegal activity believed to be conducted at the location, the number and behavior of the persons present at the time of day or night when the sought warrant was proposed to be executed, and whether persons unconnected with the illicit activity had been observed at the premises. *Nieves* required the address of each of these issues in the application (*id.* at 404-405).

The essential object of the searching examination required of the reviewing magistrate under *Nieves* is to guard against the authorization of a dragnet likely to include the innocent, a danger that would otherwise routinely be courted in issuing all-persons-present warrants. Naturally, the reasonableness of this species of warrant may depend upon whether a more specifically focused search authorization can be framed (*see id.*), but it does not follow that an application for such a warrant can be justified solely by the inability of the applicant individually to identify the particular person or persons to be searched. The requirement of probable cause both for the proposed search of the premises and for the search of each person present at the time of the warrant's execution is unwavering: "[T]he facts before the issuing Judge at the time of the warrant application, and reasonable inferences from those facts, must establish probable cause to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the articles sought" (*id.* at 404; *see also Ybarra v Illinois*, 444 US 85, 91 [1979] ["Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. *This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be*" (emphasis added)]).

In defending the adequacy of the present application against this standard, the People remind us of the maxim that warrant applications are not to be hypertechnically read. But that principle of construction was never intended as license to excuse deficiencies in an application's factual underpinning (*see Steele v United States*, 267 US 498, 503 [1925]; *People v Hendricks*, 25 NY2d 129, 137 [1969]). Even generously read, the application at bar must be deemed unequal to its purpose.

Amid the application's pages of boilerplate allegations are the following few relevant particulars: that the premises at issue were residential in nature; and that on two occasions separated by weeks cocaine in unspecified quantities had been purchased at the premises by trusted confidential informants from one or two men, undescribed except that after the first buy the seller was referred to as "Tom." But, two isolated purchases of what must be supposed to have been small quantities of narcotics cannot suffice to show that a residential location has been given over entirely to the drug trade, much less that every person at the location is probably a participant in drug trafficking. The warrant application does not state, as it is required to by *Nieves*, whether any innocent use of the premises had been observed. Nor is there information in the application respecting the number or behavior of the persons ordinarily present at the apartment at the time of the sought warrant's contemplated execution—here, "any time of the day or night."

In the end, the only statement in the warrant application even purporting to justify the issuance of an all-persons-present warrant is the one in which the deponent offers on the basis of her past experience that it is "not uncommon that persons found in the subject residence could reasonably be expected to conceal cocaine." But, as noted, the search of all persons present, particularly where, as here, it is proposed to be accomplished solely on the authority of a warrant to be executed at any time, requires a showing of facts from which it can be inferred that it is substantially probable that any persons present at the warrant's execution will have the sought evidence of crime upon them; this governing standard is manifestly not met by the above-quoted fairly opaque formulation, which, charitably construed, ventures no more than that some persons present at the subject residence might have cocaine upon their persons.

Our conclusion that this all-persons-present warrant is not valid should not be taken as signifying a departure from *Nieves*'s initial holding that warrants of this sort are not categorically

unconstitutional. Indeed, we think it clear that surveillance of a location may yield a factual basis to infer with the requisite force that the place is devoted to an ongoing illicit purpose, such as the manufacture or marketing of narcotics (a "drug factory") or their use (a "shooting gallery" or "drug house"), and that all those present at the time of the contemplated search will probably be in possession of contraband or other specified evidence of illegality. Although the predicate for this kind of warrant cannot, consistent with the essential constitutional purpose of protecting persons from unreasonable searches, be less than exacting, the warrant may still have utility. Its utility, however, may not permissibly arise, as it apparently has in practice, from any relaxation of the requirement of probable cause as to each person targeted for search or seizure.

While the warrant's invalidity is dispositive of defendant's entitlement to suppression, we briefly address defendant's second point in view of the hearing testimony indicating that strip searches are commonly performed solely on the authority of all-persons-present warrants.

We have held that a post-arrest strip search must be based upon reasonable suspicion that an arrestee is hiding contraband beneath his or her clothing, and that a search involving visual examination of an arrestee's anal and genital cavities—a distinctly elevated level of intrusion, which must be separately justified—may not be performed except upon a "specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity" (*People v Hall*, 10 NY3d 303, 311 [2008], *cert denied* 555 US —, 129 S Ct 159 [2008]). In this connection, we stressed in language particularly resonant here that

> "visual cavity inspections . . . cannot be routinely undertaken as incident to all drug arrests or permitted under a police department's blanket policy that subjects persons suspected of certain crimes to these procedures. *There must be particular, individualized facts known to the police that justify subjecting an arrestee to these procedures* (*see generally People v McIntosh*, 96 NY2d 521, 525 [2001]). Our precedent on this point is unequivocal: the police are required to have 'specific and articulable facts which, along with any logical deductions, reasonably prompted th[e] intrusion' (*People v Cantor*, 36 NY2d 106, 113 [1975]), although they are allowed to 'draw on their

own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person' (*United States v Arvizu*, 534 US 266, 273 [2002] [internal quotation marks omitted])" (*id.* at 311 [emphasis added]).

■ Thus, even where there is probable cause for an arrest, and a suspect has been arrested—something that had not yet occurred at the time of the search of defendant—there must, in addition to the predicate for the arrest, be grounds to justify the very significant intrusion of a strip or visual body cavity search.* It is not enough that there is probable cause to suppose that a person possesses contraband or that pursuant to a warrant there may exist grounds for a non-strip search; where a strip search is to be performed, there must also exist "particular, individualized facts known to the police that justify subjecting an arrestee to these procedures" (10 NY3d at 311), i.e., specific facts to support a reasonable suspicion that a particular person has secreted contraband beneath his or her clothes or in a body cavity. Such a predicate did not exist at the time that the present warrant was sought and, accordingly, these extraordinary intrusions could not have been within any authority the warrant was capable of conferring.

A search warrant exists and is required not simply to permit, but to circumscribe police intrusions (*see Marron v United States*, 275 US 192, 196 [1927] ["nothing is left to the discretion of the officer executing the warrant"]). This warrant, even if valid for other uses, would fail of its essential limiting purpose if it were understood to afford plenary authority for the inspection of the most private recesses of a person's anatomy.

Accordingly, the order of the Appellate Division should be reversed, the motion to suppress granted, and the indictment dismissed.

READ, J. (concurring). Whether the warrant application in this case was sufficient to support an all-persons-present search for drugs is a close question. Ultimately, though, I conclude that the information presented in the affidavit supporting the warrant application was simply too skimpy and dependent on boilerplate. All-persons-present warrants for drug searches have

---

* If the search involves the removal of an object secreted within a body cavity, a warrant specifically authorizing the intrusion must first be obtained (*People v More*, 97 NY2d 209 [2002]).

been approved where the supporting affidavits supply more detailed information regarding the experience and training of the officer seeking the warrant, including that, in the officer's experience, persons engaged in the sale of drugs often work in concert with others and that those engaged in such activities frequently maintain residences separate and apart from the location where the drug-related activity is conducted (*see People v Williams*, 284 AD2d 564, 565 [3d Dept 2001], *lv denied* 96 NY2d 909 [2001]). Additional details to support an all-persons-present warrant based on drug purchases made by an informant might also include, for example, whether the drugs at the target location were in open view; whether scales and glassine bags were visible; whether those observed at the location appeared to be high, or were using drugs; and, generally, how many people were seen and whether any of them appeared unaware of or uninvolved with the illegal activity taking place.

As the majority points out, police surveillance may also supply a sufficient factual basis from which to infer that a location is a drug factory, shooting gallery or drug house, and that all those present when a search warrant is executed will likely possess contraband or other evidence of illegality (*see* majority op at 365-366). These havens for drug activity are often found in the most disadvantaged neighborhoods, whose innocent residents suffer from the high crime incident to the illicit drug trade in their midst. The all-persons-present warrant—properly supported—is a tool for combating drug crime for the benefit of these citizens. As for the strip/visual body cavity search, the facts set out in the affidavit and brought out at the suppression hearing did not meet the standard articulated in *People v Hall* (10 NY3d 303 [2008], *cert denied* 555 US —, 129 S Ct 159 [2008]), which was decided after the hearing took place in this case.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur with Chief Judge LIPPMAN; Judge READ concurs in a separate concurring opinion in which Judges GRAFFEO and PIGOTT concur.

Order reversed, etc.