The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Omar Anthony KING, Defendant–Appellant.

No. 08CA1123.

Colorado Court of Appeals, Div. IV.

Oct. 27, 2011.

Rehearing Denied Dec. 1, 2011.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Nathaniel E. Deakins, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Omar Anthony King, appeals the judgment of conviction entered on jury verdicts finding him guilty of possession of a schedule II controlled substance, contesting the method used to execute a warrant, the strip search of his person, and the seizure of incriminating evidence. We conclude that, because of their invasive nature, strip searches require reasonable suspicion specific to the search and are outside the scope of a warrant allowing a search "upon person."

Additionally, we conclude that the no-knock method used to execute the warrant was proper because there were exigent circumstances necessitating an unannounced entry.

Accordingly, we remand the case to the trial court for a post-suppression hearing and for findings of fact as to whether the officers had the necessary justification required for the strip search, specifically, whether the officers had reasonable suspicion that defendant concealed contraband on his body.

## I. Background

Defendant was charged with one count of possession of a schedule II controlled substance with intent to distribute following an encounter with police at a motel in which defendant was found with cocaine. Following a jury trial, defendant was convicted of the charged count.

## II. Motion to Suppress

On appeal, defendant challenges the trial court's denial of his motion to suppress on two grounds: (1) that the trial court erred in concluding that the strip search was within the scope of the search warrant and (2) that the trial court erred in concluding that the searching officers did not violate the knock and announce principle of the Fourth Amendment. We disagree with the trial court's conclusion regarding the scope of the warrant and agree with its conclusion regarding the knock and announce principle.

## III. Facts

According to the evidence at the suppression hearing, defendant was in his motel room when the Aurora Police Department SWAT team, without knocking or announcing their presence, forced open the door to execute a search warrant for drugs. After a pat-down search of defendant revealed nothing, one officer asked defendant to sit outside the motel room in handcuffs. The officers searched the room and did not find any drugs, but found two crack pipes, a box of plastic sandwich baggies, and a copper scrubber.

After the search of the room was complete, the officers brought defendant back into the

room to conduct a more thorough search of his person. There were at least five officers present in the room, including Officers Poppe and Ingui. Officer Poppe asked defendant to remove his pants, which the officer testified was for the purpose of searching for hidden pockets within the pants. As defendant was lowering his pants, he notified Officer Poppe that he was not wearing underwear, to which the officer replied, "[T]hat's all right."

At the suppression hearing, Officer Poppe, Officer Ingui, and defendant testified to three different versions of the ensuing search. Officer Poppe testified that upon removal of defendant's pants, a plastic baggie was visibly protruding from defendant's buttocks, which the officer then pulled free. Officer Ingui testified that the baggie was partially protruding from defendant's rectum and anus and that Officer Poppe pulled the baggie from defendant's anus. Defendant testified that Officer Poppe instructed him to bend over, at which point the officer physically inserted his finger into defendant's anus to remove the baggie.

The baggie contained approximately twenty smaller baggies of cocaine. Upon identification of the cocaine, the officers placed defendant under arrest.

The trial court concluded that the search of defendant's person was within the scope of the warrant. However, the court did not address the issue of whether the search constituted a strip search. Further, the trial court concluded that the no-knock entry was proper because there were exigent circumstances necessitating an unannounced entry.

## IV. Scope of the Warrant

Initially, defendant contends that the strip search was outside the scope of the warrant because the officers did not have a specific justification for the more intrusive search. Whether a strip search is within the scope of a warrant allowing for the search "upon person" is a matter of first impression for this court. We agree with defendant and conclude that strip searches require reasonable suspicion that contraband has been concealed on the body, and, therefore, are outside the scope of such a warrant.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence as a mixed question of law and fact. *People v. Bradshaw*, 156 P.3d 452, 455–56 (Colo.2007). We defer to the trial court's factual findings, so long as they are supported by the record, but review its legal conclusions de novo. *Id.; People v. Arroya*, 988 P.2d 1124, 1129 (Colo.1999).

## B. Analysis

■ The United States and Colorado Constitutions protect an individual from unreasonable searches and seizures. U.S. Const. amends. IV, XIV; Colo. Const. art. II, § 7. In general, to comply with the reasonableness requirement, the federal and state constitutions require a police officer to obtain a warrant before conducting a search. *See* U.S. Const. amends. IV, XIV; Colo. Const. art. II, § 7; *Arizona v. Gant*, 556 U.S. 332, 337, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009). However, a search that is initially justified because it is made pursuant to a warrant may nevertheless violate the constitutions if it exceeds the scope of the authority provided in the warrant. *Horton v. California*, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

■ A search of a person may range from a pat-down to a full search of the person to a more intrusive strip search. Strip searches are different in nature, quality, and intrusiveness from full searches of a person's body. *Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364, 373, 129 S.Ct. 2633, 2641, 174 L.Ed.2d 354 (2009) ("both subjective and reasonable societal expectations of personal privacy support the treatment of such a search as categorically distinct, requiring distinct elements of justification on the part of school authorities for going beyond a search of outer clothing and belongings"); *People v. Williams*, 192 Colo. 249, 257, 557 P.2d 399, 406 (1976) (" 'The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions (beneath the body's surface) on the mere chance that desired evidence might be obtained.' " (quoting *Schmerber v. California*, 384 U.S. 757, 769, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)));

*Washington v. Whitaker,* 317 S.C. 108, 451 S.E.2d 894, 899 (1994) ("Strip searches are 'demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive and signifying degradation [and] submission.'" (quoting *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1272 (7th Cir.1983))).

Colorado criminal statutes define a strip search as "having an arrested person remove or arrange some or all of his or her clothing so as to permit a visual inspection of the genitals, buttocks, anus, or female breasts of such person." § 16–3–405(2), C.R.S.2011; *see Safford,* 557 U.S. at 373, 129 S.Ct. at 2641 (school administrator's order to student to remove her clothes down to underwear and "pull out" her bra and elastic band on underwear can fairly be described as a "strip search"); *Kidd v. Commonwealth,* 38 Va. App. 433, 565 S.E.2d 337, 343 (2002) (a strip search occurred when an officer pulled defendant's underwear and sweatpants away from his body allowing visual inspection of his genitals); *Hughes v. Commonwealth,* 31 Va. App. 447, 524 S.E.2d 155, 160–61 (2000) (having defendant disrobe and allowing officers to look into his underwear for drugs was a strip search of his person).

■ Here, we conclude on the basis of the record before us that the officers performed a strip search on defendant.[1] While Officer Poppe testified that he had defendant take off his pants to search for hidden pockets in the clothing, it became a strip search when defendant notified him that he was not wearing underwear. At that point, the officer continued to have defendant remove his pants, which then permitted Officer Poppe and at least four other officers to visually inspect defendant's genitals and buttocks. *See* § 16–3–405(2).

■ Where a strip search is to be performed, a warrant or probable cause that the person possesses contraband is not enough; there must be "specific facts to support a reasonable suspicion that a particular person has secreted contraband beneath his or her clothes or in a body cavity." *People v. Mothersell,* 14 N.Y.3d 358, 900 N.Y.S.2d 715, 926 N.E.2d 1219, 1226 (2010); *cf. Hartline v. Gallo,* 546 F.3d 95, 100 (2d Cir.2008) (strip search of misdemeanor arrestee requires individualized reasonable suspicion that arrestee is concealing weapons or other contraband; mere presence of marijuana debris in arrestee's truck did not supply reasonable suspicion she had drugs on her person); *Evans v. Stephens,* 407 F.3d 1272, 1279–80 (11th Cir.2005) (investigative strip searches conducted post arrest for drugs without at least reasonable suspicion—court leaves open question whether actual standard may be higher—to believe drugs are present are unconstitutional); *Savard v. Rhode Island,* 338 F.3d 23, 30 (1st Cir.2003) (en banc) (right of persons charged with nonviolent, nondrug-related minor offenses to be free from strip searches absent particularized suspicion was clearly established by year 2000); *Foote v. Spiegel,* 118 F.3d 1416, 1425 (10th Cir.1997) ("not clearly unconstitutional to strip search persons arrested for possession of drugs but not placed in the general inmate population, at least if there is reasonable suspicion they have additional drugs or weapons on their persons"); *Masters v. Crouch,* 872 F.2d 1248, 1255 (6th Cir.1989) (authorities may not strip search persons arrested for traffic violations and nonviolent minor offenses solely because such persons ultimately will intermingle with the general population at a jail when no circumstances support a reasonable belief that the detainee will carry weapons or other contraband into the jail); *United States v. Holtz,* 479 F.2d 89, 90 (9th Cir.1973) (requiring objective, articulable facts and real suspicion directed specifically at the person to be searched to justify a strip search); *Hughes,* 524 S.E.2d at 161 (a strip search is "peculiarly intrusive" and requires "special justification").

■ We find persuasive the holdings of the Virginia and New York courts, and of the First, Second, Fifth, Ninth, Tenth, and Eleventh Circuits and conclude as a matter of law

---

1. We decline to address the issue of whether the search evolved into a body cavity search when the baggie was removed from defendant's buttocks. Since there was testimony to the effect that at least one officer saw the baggie in plain view, the required justification for the more invasive search was present, and therefore, the distinction is not dispositive for the issue at hand.

that strip searches are outside the scope of a warrant for a search "upon person." Strip searches are distinct from general searches in that they are more invasive and subject the person being searched to potential humiliation and degradation. For that reason, strip searches must be authorized by a warrant allowing strip searches that includes an articulable basis for the more invasive search, or by officers having particularized reasonable suspicion that the defendant has hidden contraband on his body.

■ Reasonable suspicion in this context must be more than a hunch. *People v. Haley*, 41 P.3d 666, 674 (Colo.2001). "Courts must consider the facts and circumstances known to the police officer at the time of the encounter in order to determine whether reasonable suspicion exists; this is an objective standard of reasonableness based on the circumstances known to the police at the time." *Id.* The officer must have " 'specific and articulable facts which, when taken together with the reasonable inferences from these facts, give rise to a reasonable suspicion.' " *Id.* (quoting *People v. Boylan*, 854 P.2d 807, 812 (Colo.1993)).

■ Here, the trial court failed to make any evidentiary findings regarding the justification for the strip search, specifically, whether the officers had the requisite reasonable suspicion that defendant was hiding drugs on his body. Accordingly, the trial court must consider this issue on remand. In doing so, the trial court should consider all the facts and circumstances of the search, including the items found and the results of the pat-down search, in determining whether the officers had reasonable suspicion. The trial court may, but is not required to take additional evidence.

## V. Knock and Announce

Additionally, defendant contends that the officers violated the knock and announce principle of the Fourth Amendment. We agree with the trial court and conclude that the no-knock entry was proper because there were exigent circumstances necessitating an unannounced entry.

## A. Standard of Review

We apply the same standard of review as above, as we review the trial court's ruling on a motion to suppress evidence as a mixed question of law and fact. *Bradshaw*, 156 P.3d at 455–56. We defer to the trial court's factual findings, so long as they are supported by the record, but review its legal conclusions de novo. *Id.; Arroya*, 988 P.2d at 1129.

## B. Analysis

■ Generally, the Fourth Amendment requires law enforcement officials to knock and announce their presence when executing a search warrant unless one of a number of exceptions apply. *People v. Lujan*, 174 Colo. 554, 558, 484 P.2d 1238, 1240–41 (1971). Those exceptions are as follows:

(1) the warrant expressly authorizes forced entry without such a prior announcement, or

(2) the circumstances known to such officer or person at the time of forced entry, but, in the case of the execution of a warrant, unknown to the applicant when applying for such warrant, give him probable cause to believe that—(a) such notice is likely to result in the evidence subject to seizure being easily and quickly destroyed or disposed of, which is true in every case involving a search of narcotics, (b) such notice is likely to endanger the life or safety of the officer or other person, (c) such notice is likely to enable the party to be arrested to escape, or (d) such notice would be a useless gesture.

*Id.* at 559, 484 P.2d at 1241. Law enforcement officials must have an objectively reasonable suspicion that one of these exceptions applies, and the showing required for a no-knock authorization is not high. *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997).

Consistent with these constitutional principles, Colorado Rule of Criminal Procedure 41(d)(5)(V) provides:

The officers executing a search warrant shall first announce their identity, purpose, and authority, and if they are not admitted, may make a forcible entry into the

place to be searched; however, the officers may make forcible entry without such prior announcement if the warrant expressly authorizes them to do so or if the particular facts and circumstances known to them at the time the warrant is to be executed adequately justify dispensing with this requirement.

Crim. P. 41(d)(5)(V).

■ Here, we conclude on the basis of the record before us that the officers had a reasonable suspicion that knocking and announcing their presence would likely result in the drugs subject to seizure being destroyed. Defendant had a history of prior drug dealings and the search took place at a motel where there was a bathroom in close proximity. As such, the officers properly forced entry into the motel room without first knocking and announcing their presence.[2]

### VI. Conclusion

In conclusion, we must remand the case for the trial court to reconsider its findings and conclusion. *People v. Cruse*, 58 P.3d 1114, 1118 (Colo.App.2002) ("Where suppression claim involves a mixed question of law and fact that cannot be resolved without additional factual findings, the appellate court should remand for further proceedings.").

Accordingly, the case is remanded to the trial court for a post-trial suppression hearing at which the trial court has the discretion to take additional evidence or to rely upon the existing record. If the court determines that the officers did not have the required reasonable suspicion to conduct the strip search, then the conviction shall be reversed and the court shall conduct a new trial without the illegally seized evidence, subject to the People's right to appeal. If the court determines that the officers had the required reasonable suspicion to conduct the strip search, then the court must further determine whether the strip search was conducted

in a reasonable manner. If the court finds that the manner was unreasonable, then the conviction shall be reversed and the court shall conduct a new trial without the illegally seized evidence, subject to the People's right to appeal. If the court finds that the manner was reasonable, then the judgment of conviction shall stand affirmed, subject to defendant's right to appeal.

Judge GABRIEL and Judge PLANK * concur.

---

**2.** Additionally, we note that suppression of evidence is no longer a remedy in a criminal case for violations of the knock and announce principle. *Hudson v. Michigan*, 547 U.S. 586, 599, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006); *People v. Butler*, 251 P.3d 519, 521–22 (Colo.App.2010). However, defendants, in proper circumstances,

might have a civil remedy in the form of 42 U.S.C. § 1983. *Id.* at 597, 126 S.Ct. 2159.